[No. 11542-5-II. Division Two. February 1, 1990.]

KATHERINE L. SCHONEMAN, *Respondent,* v. HAROLD D. WILSON, *Appellant.*

*Gary H. Sexton* and *Sexton & Bratt,* for appellant.

*John A. Bishop, Russell W. Hartman,* and *Bishop, Cunningham, Hartman & Beattie, Inc., P.S.,* for respondent.

PETRICH, J.—Harold Wilson, vendee under a real estate contract, appeals an order of the Kitsap County Superior Court granting summary judgment to Katherine Schoneman, vendor, declaring the contract abandoned and quieting title to the property in question in Schoneman. We reverse.

In September of 1963, Schoneman entered into a real estate contract for the sale of certain property located in Kitsap County to Wilson. The real estate contract provided for a down payment of $25, with a total purchase price of $1,450 to be paid as follows:

. . . $15.00 or more, including interest at the rate of seven percent per annum, on the 1st day of August, 1963, and a like amount every first day of each and every month thereafter until fully paid.

The terms of the contract further provided that the purchaser was to pay all assessments and taxes.

Wilson made the initial $25 down payment and the first $15 monthly payment due, but made no further payments, did not take physical possession of the property, and did not pay the real estate taxes as they fell due. Schoneman thereafter continued to pay the assessed real estate taxes on the property for the years 1964 through 1986, inclusive. At no time between the time of contracting in 1963 and the institution of this action in April of 1986, a period of 23 years, did Schoneman make a demand upon Wilson for the monthly payments, nor did either party seek specific performance from the other under the contract.

On April 17, 1986, Schoneman filed a "Notice of Intent to Declare Forfeiture" pursuant to RCW 61.30, the Real Estate Contract Forfeiture Act. The notice provided that Wilson could avoid forfeiture of the contract by tendering $5,006.31, plus payments falling due subsequent thereto, to Schoneman prior to July 30, 1986. Upon receipt of the notice, Wilson flew from his residence in California to Bremerton, and tendered payment of the sum requested to Schoneman's attorney on July 25, 1986. The attorney accepted the tender, but Schoneman thereafter returned the funds to Wilson.

Schoneman, contending the contract had been abandoned, then sought a decree quieting title to the land in her. Cross motions for summary judgment were filed. Schoneman argued that both parties, through their conduct, mutually abandoned the contract. Wilson, in contrast, asserted that:

(1) The Real Estate Contract Forfeiture Act was the sole remedy by which Schoneman could terminate the contract;

(2) Notwithstanding the statutory act, Schoneman was precluded under the common law from declaring abandonment of the contract absent notice and opportunity to cure the default and/or the facts do not support the trial court's conclusion that the contract was abandoned;

(3) Schoneman waived any right to allege abandonment of the contract by virtue of having initially proceeded under the Real Estate Contract Forfeiture Act;

(4) Schoneman was estopped from alleging abandonment of the contract by virtue of the language of the notice which provided that Wilson could avoid forfeiture of the contract if payment was made prior to July 30, 1986; and,

(5) Even if the initial contract was abandoned, Schoneman made an offer to renew the contract by issuing the notice which offer was accepted by Wilson's tender of payment.

The trial court rejected Wilson's contentions and entered summary judgment in favor of Schoneman, concluding that the contract was mutually abandoned by the parties.

■ In reviewing a trial court's decision to grant summary judgment, an appellate court engages in the same inquiry as did the trial court. *Hontz v. State,* 105 Wn.2d 302, 311, 714 P.2d 1176 (1986). Pursuant to CR 56(c), a motion for summary judgment should not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hontz,* 105 Wn.2d at 311.

The court must consider all of the facts submitted and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Trane Co. v. Brown–Johnston, Inc.,* 48 Wn. App. 511, 513, 739 P.2d 737 (1987). Questions of fact may be determined as a matter of law, however, when reasonable minds could reach but one conclusion. *Hartley v. State,* 103 Wn.2d 768, 775, 698 P.2d 77 (1985); *Trane Co.,* 48 Wn. App. at 513.

# I
## REAL ESTATE CONTRACT FORFEITURE ACT

Wilson first contends that the Real Estate Contract Forfeiture Act provides the exclusive remedy of a vendor seeking to extinguish the rights of a vendee under a real estate contract. We disagree.

Washington's Real Estate Contract Forfeiture Act provides that: "A purchaser's rights under a real estate contract shall not be forfeited except as provided in this chapter." RCW 61.30.020. The act requires that the seller give notice of intent to forfeit to the purchaser, following which the purchaser has 90 days in which to "cure" the default. RCW 61.30.070(1)(e). The act provides the exclusive procedures for nonjudicial forfeiture of a real estate contract. *Galladora v. Richter*, 52 Wn. App. 778, 764 P.2d 647 (1988).

The act, however, also provides that:

This chapter shall not be construed as prohibiting or limiting any remedy which is not governed or restricted by this chapter and which is otherwise available to the seller or the purchaser.

RCW 61.30.020(1). Those remedies which are not precluded by the act have been described as those involving a seller's suit for damages, installments as they fall due, and/or specific performance. Hume, *The Washington Real Estate Contract Forfeiture Act*, 61 Wash. L. Rev. 803, 807 n.26 (1986).

The trial court in the present case similarly concluded that the doctrine of "abandonment" was not a remedy governed or restricted by the act. This conclusion was based on the court's reasoning that the Legislature could not have intended the act to reinstate contracts that had long been abandoned and forgotten about by the parties.

■ We concur in the trial court's reasoning. The Real Estate Contract Forfeiture Act pertains to "forfeitures," which term is defined by statute as "to cancel the purchaser's rights under a real estate contract". RCW 61.30.010(4). The purpose of the act is to protect a purchaser from the

ability of the seller to abuse forfeiture rights. *See* Hume, 61 Wash. L. Rev. at 803–04.

In contrast, the doctrine of "abandonment" is analogous to the mutual rescission of a contract by the consent of both parties. *See Modern Builders, Inc. v. Manke,* 27 Wn. App. 86, 615 P.2d 1332, *review denied,* 94 Wn.2d 1023 (1980); *Martinson v. Publishers Forest Prods. Co.,* 11 Wn. App. 42, 521 P.2d 233 (1974). The doctrine of abandonment, as stated in *Manke,* provides that:

> The parties to an express contract may abandon it and are released from their contractual obligations if the conduct of one party is inconsistent with the continued existence of the contract and that conduct is known to and acquiesced in by the other party. . . . In order for rescission to be legally operative, all parties to the contract must consent to rescission by words or objective conduct.

(Citations omitted.) *Manke,* 27 Wn. App. at 92. Accordingly, the remedy of "abandonment" is separate and distinct from that of "forfeiture" and, thus, we conclude that the Real Estate Contract Forfeiture Act does not preclude this remedy.

## II
### ABANDONMENT OF REAL ESTATE CONTRACT

Wilson contends in the alternative that under the common law a vendee's rights in a real estate contract are not subject to abandonment, bur rather, can only be terminated by serving notice on the vendee and by compliance with statutory procedures similar to those applicable to mortgage foreclosure, *i.e.,* opportunity to cure the default and judicial sale of property in the event of default. We again disagree.

■ Wilson's contention that the common law does not permit abandonment absent notice and opportunity to cure the default is based upon the general trend in the law to treat real estate contracts as mortgages, thus affording purchasers under real estate contracts the same protection as that afforded mortgagors with regard to the termination of

a purchaser's interest.[1] Accordingly, Wilson asserts that the interest of a contract purchaser should be viewed as analogous to that of a mortgagor. In this regard, it has been held that a mortgagor's right to possession is not lost by abandonment. *See Howard v. Edgren*, 62 Wn.2d 884, 885, 385 P.2d 41 (1963).

The cases cited by Wilson all address the issue of forfeiture, not abandonment and, thus, we find them distinguishable. Furthermore, we note that Washington has expressly extended the protection of a mortgagor to contract purchasers in the context of forfeitures, by virtue of the enactment of the Real Estate Contract Forfeiture Act. Accordingly, we find no authority for abolishing the doctrine of abandonment with regard to real estate contracts.

With regard to the common law as it pertains to real estate contracts, Washington has concurred in the application of the doctrine of abandonment to real estate contracts. *See Behham v. Columbia Canal Co.*, 74 Wash. 110, 132 P. 884 (1913); *Voight v. Fidelity Inv. Co.*, 49 Wash. 612, 96 P. 162 (1908). In *Voight*, the court rejected a purchaser/vendee's claim for specific performance of a real estate contract which the court found to have been abandoned, the court stating as follows:

> We think, when it was shown that the appellant had made no payments whatever which were provided for in the contract, had not paid the taxes which he had contracted to pay, and had quit the possession of the land, all for nearly three years, that the court was justified in concluding that there had been an actual abandonment of the contract on the part of the appellant . . ..

---

[1]Wilson cites as evidence of this trend, the following cases: *Skendzel v. Marshall*, 261 Ind. 226, 301 N.E.2d 641 (1973), *cert. denied*, 415 U.S. 921 (1974); *H&L Land Co. v. Warner*, 258 So. 2d 293 (Fla. Dist. Ct. App. 1972); *Sebastian v. Floyd*, 585 S.W.2d 381 (Ky. 1979); *Anderson Contracting Co. v. Daugherty*, 274 Pa. Super. 13, 417 A.2d 1227 (1978); and *Bean v. Walker*, 95 A.D.2d 70, 464 N.Y.S.2d 895 (1983). All of the above cases held invalid various forms of forfeiture actions instituted by vendors under real estate contracts on which the purchaser/vendee had defaulted, the courts stating generally that land sales contracts are analogous to conventional mortgages, and thus the purchaser/vendee's rights under a real estate contract should be protected in a similar manner.

*Voight,* 49 Wash. at 615. The court further stated, with regard to the implication of permitting a vendee to recover under such circumstances, as follows:

> to allow a party to contract for the purchase of land, making thereon a small payment and contracting to make other payments in the near future, and to pay no attention to his covenants for a term of years until it develops whether the land is to become valuable or not, while during this time the grantor is bound by the contract, would be working an injustice upon the rights of citizens, and such a practice should not be tolerated.

*Voight,* 49 Wash. at 615–16. Similarly, the court in *Benham* held that the plaintiff therein had abandoned his rights as purchaser under a contract for the sale of land, where the plaintiff had failed to make payments under the contract for over a year, had been notified by the vendor that it rescinded the contract on account of the default, and acquiesced in such rescission for a period of over 3 years. *Benham,* 74 Wash. at 120–21.

As a form of mutual rescission of the contract, we conclude the doctrine of abandonment continues to have application, under the common law, to real estate contracts. This conclusion is consistent with the general principle that parties in any contract are free to abandon it by mutually manifesting a clear intention to do so. *See In re Estate of Lyman,* 7 Wn. App. 945, 948, 503 P.2d 1127 (1972), *aff'd,* 82 Wn.2d 693, 512 P.2d 1093 (1973).

## III
### ESTOPPEL

Wilson further contends that Schoneman is estopped from asserting abandonment of the contract by virtue of her having served Wilson with with the "Notice of Intent to Declare Forfeiture." We disagree.

The elements of equitable estoppel are (1) an admission, statement or act inconsistent with a claim afterward asserted, (2) action by another in reliance upon that act, statement or admission, and (3) injury to the relying party from allowing the first party to contradict or repudiate the prior act, statement or admission. *Board of Regents*

*of UW v. Seattle,* 108 Wn.2d 545, 551, 741 P.2d 11 (1987). Implicit in the above factors is that the assertion on which estoppel is based must induce detrimental reliance by the other party. *Nichols Hills Bank v. McCool,* 104 Wn.2d 78, 85, 701 P.2d 1114 (1985). Such reliance, in turn, must be reasonable. *Landreville v. Shoreline Comm'ty College Dist. 7,* 53 Wn. App. 330, 332, 766 P.2d 1107 (1988).

The sole detriment incurred by Wilson in reliance upon the notice sent by Schoneman was the time and expense incurred by Wilson in personally appearing to tender the amount called for under the notice. The notice, however, merely required Wilson to respond within 90 days.[2] Accordingly, Wilson's conduct in personally appearing cannot be said to be "reasonable" under the conditions stated in the notice. We conclude, therefore, that Wilson may not urge estoppel against Schoneman as her conduct did not induce Wilson to incur any "reasonable" detriment in reliance thereon.

## IV
### FINDING OF ABANDONMENT

Assuming the doctrine of abandonment is applicable, Wilson contends that the trial court erred in concluding, as a matter of law, that Wilson abandoned his rights under the contract. We agree insofar as there appears to remain a question of fact *as to whether the parties' conduct, when viewed as a whole, clearly manifests a rescission of the contract based upon Wilson's abandonment of the contract and Schoneman's acquiescence therein.*

 Abandonment involves a mixed question of law and fact. *Martinson v. Publishers Forest Prods. Co.,* 11 Wn. App. 42, 49, 521 P.2d 233 (1974). As stated in *Martinson*:

> Conceptual difficulties arise from the terms employed to describe the action taken by the parties to terminate performance under a contract. The occurrence of the action is

---

[2]*See* RCW 61.30.070(1)(e).

described as the occurrence of a fact; yet the finding of abandonment gives rise to a legal conclusion and result. The classification of abandonment as a finding of fact or a conclusion of law has little impact, but realizing the existence of mutual intent to discontinue performance is dispositive.

*Martinson,* 11 Wn. App. at 50. As noted above, abandonment is premised upon the concept of mutual rescission of the contract as evidenced by the conduct, as opposed to words, of the parties. *See Modern Builders, Inc. v. Manke, supra.* In an agreement of rescission, all parties to the contract must assent to its rescission and there must be a meeting of the minds. *Martinson,* 11 Wn. App. at 49. Accordingly, the primary element to be established is an actual intent to relinquish or part with the right or rights claimed to be abandoned. *Shew v. Coon Bay Loafers, Inc.,* 76 Wn.2d 40, 50, 455 P.2d 359 (1969).

In the context of abandonment, the intent to rescind is derived from the objective conduct of the parties. *Manke,* 27 Wn. App. at 92. Conduct that is indicative of abandonment includes: (1) lack of possession of the property by the purchaser; (2) length of time the purchaser has been in default; and (3) refusal of the vendee/purchaser to comply with the agreement, including default in the payment of principal, interest, taxes or insurance. *See* Annot., *What Constitutes Abandonment of Land Contract by Vendee,* 68 A.L.R.2d 581, 584–85 (1959).

Based upon the facts in the present case, we cannot say, as a matter of law as we must upon summary judgment, that the parties' conduct manifested the necessary meeting of the minds to abandon the contract. While a persuasive argument can be made that Wilson's conduct in failing to make payments, take possession and/or comply with the other conditions of the contract for a period in excess of 23 years, manifests his intent to abandon the contract, nevertheless one could argue that his response to Schoneman's notice of forfeiture evidenced a contrary intent. A persuasive argument also can be made that Schoneman's conduct through this extended period manifests her acquiescence in

Wilson's claimed abandonment, but her issuance of the notice of forfeiture, arguably, indicated otherwise. Resolution of the issue of abandonment under these facts appropriately is in the hands of the trier of fact.

Wilson's additional contentions that Schoneman waived her right to claim abandonment; and, in the alternative, created a new contract essentially reviving the contract by virtue of her filing of the notice of intent to declare forfeiture, similarly depend upon disputed issues of fact.[3] To the extent the trier of fact, upon remand, concludes that the parties abandoned the contract, the additional issues of waiver and formation of the contract will need to be addressed.

Reversed.

ALEXANDER, C.J., and WORSWICK, J., concur.

---

[3]With regard to waiver, waiver is generally a question of fact. *International Ass'n of Firefighters, Local 469 v. Public Empl. Relations Comm'n,* 38 Wn. App. 572, 576, 686 P.2d 1122, *review denied,* 102 Wn.2d 1021 (1984). Similarly, with regard to the formation of a contract, if a reasonable person would believe that an offer was being made, then the speaker risks the formation of a contract which was not intended. *Barnes v. Treece,* 15 Wn. App. 437, 440, 549 P.2d 1152 (1976). Accordingly, such issues are inappropriate for resolution upon summary judgment.